**UNITED STATES v. KLEINMAN et al.**

Nos. 451–52 and 452–52.

United States District Court
District of Columbia.

Oct. 6, 1952.

Charles M. Irelan, U. S. Atty., William Hitz, Asst. U. S. Atty., Washington, D. C., for plaintiff.

William J. Corrigan, Timothy McMahon, Cleveland, Ohio, William H. Collins, Washington, D. C., for defendants.

SCHWEINHAUT, District Judge.

These defendants were indicted for contempt of Congress for refusing to testify before the Special Committee of the Senate investigating organized crime in interstate commerce. Both the prosecution and the defense waived a trial by jury and therefore the matter is for the court to decide. Since this case is without precedent it is desirable that I give, as simply as possible, the reasons for the views that I hold and the conclusion that I have reached.

The committee had information that the defendants were leaders in extensive gambling operations which crossed state lines from their headquarters in Cleveland. They were subpoenaed to testify before the committee in Washington. When they appeared each refused to answer any questions and each made practically identical statements as to why he would not do so. Neither claimed constitutional protection against self-incrimination, but instead generalized that his "constitutional rights" would be violated if compelled to testify while being televised, with newsreel cameras and other "apparatus" in operation.

The subject, particularly the use of television by legislative committees, has been discussed and written upon by the American Bar Association, local bar associations, and individuals. They have taken many and, in some instances, I think rather complicated and not too clear, approaches to the matter.

The issue seems to me not complex but simple in its nature and simple in its solution. I see no constitutional question applicable to these cases.

██ Under our system of government with its separation of powers, I think it clearly beyond the constitutional authority of the courts to regulate the conduct of congressional hearings except when the Congress chooses, as it has done in this instance, to refer the case of a contumacious

witness to the court for punishment. Either house of Congress may itself try, and if warranted, punish a witness who wilfully and without justification refuses to testify concerning matters pertinent to the legislative purpose of the inquiry. It may be that a congressional committee does not even have to have a legislative purpose but may conduct hearings solely to inform the public. So far as I am aware, no court has ever held that a congressional committee may compel the attendance of witnesses without having a legislative purpose. But that question I need not and do not decide in these cases.

For many years, and for obvious reasons, the Congress, instead of handling the matter itself, has referred cases of contumacious witnesses to the judiciary. It has done so in this instance.

■ When the power of the court to punish is invoked, it necessarily follows in order properly to determine the guilt or innocence of the accused, that the court must examine the entire situation confronting the witness at the time he was called upon to testify. Only thus can it be determined whether his refusal was capricious and arbitrary and therefore a wilful, unjustified obstruction of a legitimate function of the legislature or was a justifiable disobedience of the legislative command.

■ The only reason for having a witness on the stand, either before a committee of Congress or before a court, is to get a thoughtful, calm, considered and, it is to be hoped, truthful disclosure of facts. That is not always accomplished, even under the best of circumstances. But at least the atmosphere of the forum should lend itself to that end.

In the cases now to be decided, the stipulation of facts discloses that there were, in close proximity to the witness, television cameras, newsreel cameras, news photographers with their concomitant flashbulbs, radio microphones, a large and crowded hearing room with spectators standing along the walls, etc. The obdurate stand taken by these two defendants must be viewed in the context of all of these conditions. The concentration of all of these elements seems to me necessarily so to disturb and distract any witness to the point that he might say today something that next week he will realize was erroneous. And the mistake could get him in trouble all over again.

■ It is said that these defendants are hardened criminals who were not and could not have been affected by the paraphernalia and atmosphere to which they were exposed. That may be so, but the court cannot take judicial notice that it is so. Moreover, it cannot be said that for John, who is a good man, one rule applies, but for Jack, who is not a good man, another rule applies. Such reasoning is incompatible with our theory of justice.

Under the circumstances clearly delineated here, the court holds that the refusal of the defendants to testify was justified and it is hereby adjudged that they are not guilty.